James B. Hardin (State Bar No. 205071)
*jhardin@trialnewport.com*
Tyler J. Woods (State Bar No. 232464)
*twoods@trialnewport.com*
Tu-Quyen Pham (State Bar No. 260864)
*tpham@trialnewport.com*
NEWPORT TRIAL GROUP
A Professional Corporation
4100 Newport Place, Suite 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff NIKE, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

NIKE, INC.,

Plaintiff,

v.

SUPER STAR INT'L, INC., and SAI LIU,

Defendants.

Case No.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**

**(1) TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1114;**
**(2) UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a);**
**(3) TRADEMARK DILUTION IN VIOLATION OF 15 U.S.C. § 1114;**
**(4) COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION;**
**(5) STATUTORY TRADEMARK DILUTION IN VIOLATION OF CAL. BUS. & PROF. CODE § 14247**
**(6) UNFAIR COMPETITION IN VIOLATION OF CAL. BUS. & PROF. CODE § 17200 ET SEQ.; AND**
**(7) PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271**

**Jury Trial Demanded**

## COMPLAINT

Plaintiff, NIKE, Inc. ("NIKE"), for its complaint against Defendants, Super Star Int'l, Inc., and Sai Liu, (collectively, "Defendants"), based on provisional knowledge and on information and belief as appropriate, alleges as follows:

## I. The Parties

1. NIKE is a corporation organized and existing under the laws of the State of Oregon with a principal place of business at One Bowerman Drive, Beaverton, Oregon 97005.

2. On information and belief, Super Star Int'l, Inc. ("Superstar"), is a corporation organized and existing under the laws of the State of California with a principal place of business at 1935 Santa Anita Ave., South El Monte, California 91733.

3. On information and belief, Sai Liu is an individual and the President and registered agent of Superstar. On information and belief, Sai Liu is the alter ego of Superstar and controls its selection, importation, and sales of footwear designs, including those relevant to this dispute.

## II. Jurisdiction and Venue

4. This is an action for trademark infringement, false designation of origin, unfair competition, trademark dilution, and patent infringement. This action arises under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq*. ("Lanham Act"), California Business and Professions Code Sections 14247 and 17200, *et seq*., federal common law, the common law of the state of California, and U.S. Patent Laws, 35 U.S.C. §§ 271, 281, 283-285.

5. This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a).

6. On information and belief, Defendants have and are continuing to advertise, offer for sale, and sell infringing and diluting footwear products to customers, including customers in the State of California and in this District.

7. On information and belief, this Court may exercise personal jurisdiction over Defendants based upon their contacts with this forum, including at least having a principal place of business here, regularly and intentionally doing business here, and committing acts giving rise to this lawsuit here.

8. Venue is proper in this judicial district pursuant to at least 28 U.S.C. §§ 1391(b) and (c).

## III. General Allegations – NIKE's Trademarks and Design Patents

9. For many years, NIKE has continuously engaged in the development, manufacture, and sale of a wide array of athletic and fashion footwear, apparel, and sports equipment. NIKE has taken many steps to protect its innovative designs, including its footwear-related designs. For example, NIKE owns a variety of common law and federal trademark rights relating to the source identifying features of its footwear designs. Additionally, NIKE owns numerous United States design patents covering many of its footwear designs.

### A. NIKE's Air Force 1 Trademarks

10. Relevant to this dispute, in 1982, NIKE designed the Air Force 1 shoe. Since then, NIKE has produced the Air Force 1 shoe in more than 1,700 different color combinations and has sold the shoe in all fifty states and around the world. The design of the Air Force 1 is one of the most popular shoe designs of all time, as evidenced by the fact that NIKE sells tens of millions of pairs of shoes bearing the Air Force 1 design every single year.

11. The Air Force 1 shoe design is also is also the subject of widespread and unsolicited public attention. This publicity extends from acclaim in magazines and newspapers to appearances in movies, television shows, and even hit songs dedicated to the shoe. In particular, the Air Force 1 shoe design has been featured in numerous newspaper, magazine, and Internet articles that extol its presence throughout American culture and/or that celebrated the shoe design's twenty-fifth anniversary in 2007. Example articles and website images illustrating the fame and unsolicited publicity of

the Air Force 1 are attached to this Complaint as Exhibit A.

12. The upper, midsole, and outsole of the Air Force 1 shoe design have a distinctive and non-functional configuration that identifies to consumers that the origin of the shoe is NIKE. Illustration 1 below shows the iconic Air Force 1 shoe design.




**Illustration 1: The Air Force 1 Shoe**

13. NIKE owns federal trademark registrations for the design of the Air Force 1 shoe. For example, NIKE owns U.S. Trademark Registration No. 3,451,905, registered June 24, 2008, for "the design of the stitching on the exterior of the shoe, the design of the material panels that form the exterior body of the shoe, the design of the wavy panel on the top of the shoe that encompasses the eyelets for the shoe laces, the design of the vertical ridge pattern on the sides of the sole of the shoe, and the relative position of these elements to each other" as generally shown in Illustration 2 below. A copy of Registration No. 3,451,905 ("the '905 Registration") is attached to this Complaint as Exhibit B.

**Illustration 2: the '905 Registration Figure**

14. NIKE also owns U.S. Trademark Registration No. 3,451,904, registered June 24, 2008, for "the design of the tread on the sole a shoe" as generally shown in Illustration 3 below. A copy of Registration No. 3,451,904 ("the '904 Registration") is attached to this Complaint as Exhibit C.



**Illustration 3: the '904 Registration Figure**

15. The '904 and '905 Registrations have become incontestable, and constitute conclusive evidence of the validity of the trademarks and of NIKE's ownership of and exclusive right to use the trademarks.

16. NIKE also owns common law trademark rights in the upper, midsole, and outsole of the Air Force 1 shoe design as a result of NIKE's continuous and exclusive use of the design for more than thirty years. NIKE's federal and common law trademark rights in the designs of the Air Force 1 shoe are collectively hereafter referred to as the "NIKE Marks."

17. As a result of NIKE's long-term, exclusive, continuous, and substantial use, advertising, and sales of shoes bearing the NIKE Marks, and the widespread publicity and attention that has been paid to the NIKE Marks, the NIKE Marks are famous and have acquired substantial secondary meaning in the marketplace as consumers have come to uniquely associate them as a source identifier of NIKE.

**B. NIKE's Asserted Design Patent**

18. NIKE is renowned for creating highly sought after, ornamental footwear designs. In 2011, NIKE introduced its NIKE Free Run +2, an image of which appears in Illustration 4 below.



**Illustration 4: the NIKE Free Run +2 Shoe**

19. Because its ornamental footwear designs are often copied, NIKE takes steps to protect its designs. To that end, on August 16, 2011, the United States Patent and Trademark Office issued United States Design Patent No. D643,202 (hereafter, the "'202 Patent" or "Asserted Patent") to NIKE (attached to this complaint as Exhibit D). An exemplary view of the claim of the Asserted Patent is displayed in Illustration 5 below. NIKE owns all right, title, and interest in the '202 Patent and the'202 Patent is presumed to be valid.



**Illustration 5: the Asserted Patent Claim**

**<u>General Allegations – Defendants' Unlawful Activities</u>**

20. On information and belief, Defendants have and are continuing to advertise, offer for sale, and sell footwear bearing confusingly similar imitations of the

NIKE Marks, as well as footwear bearing designs that are substantially similar to the Asserted Patent (collectively, the "Offending Products").

21. Illustration 6 below demonstrates Defendants' unlawful activity by comparing examples of the NIKE Marks and the Asserted Patent to representative images of Offending Products.

| **Illustration 6: Example NIKE Marks or Asserted Patent (left), Representative Offending Product (right)** | |
|---|---|
| **'905 Registration Figure** | |
| **Air Force 1 Shoe Design** | **Offending Product** |

| **Illustration 6: Example NIKE Marks or Asserted Patent (left), Representative Offending Product (right)** | |
|---|---|
| **'904 Registration Figure**<br>**Air Force 1 Shoe Design** | **Offending Product** |
| **Asserted Patent Claim** | **Offending Product** |

22. NIKE used the NIKE Marks extensively and continuously before Defendants began selling, offering to sell, distributing, or advertising the Offending Products.

/ / /

23. NIKE never authorized Defendants to sell, offer to sell, distribute, or advertise the Offending Products.

24. This is not the first time Defendants have infringed NIKE intellectual property rights, or the intellectual property rights of Converse Inc. ("Converse"), a wholly owned subsidiary of NIKE. Over the past eight years the Defendants, which on information and belief have operated under a variety of company and/or trade names, including JeAir and K-Air, have established a clear pattern of willful infringements. To that end, between February 2006 and February 2012, NIKE and Converse served Defendants or their predecessor businesses with seven cease and desist letters relating to infringement of eleven NIKE design patents and several Converse trademarks.

25. Because Defendants refused to stop infringing NIKE and Converse's intellectual property rights, on June 15, 2012, NIKE and Converse filed civil action number No. 12-5240 in the Central District of California against the Defendants, among other parties. Defendants ultimately admitted their infringements and consented to entry of judgment in favor of NIKE and Converse on every allegation of the complaint. (*See* Case No. 12-5240, Dkt. No. 90). The Court entered the consent judgment and a permanent injunction on May 15, 2013. (*Id.*).

26. Several months later, on August 21, 2013, NIKE's representatives observed Defendant Superstar at the World Shoe Association ("WSA") trade show in Las Vegas offering to sell shoes identified as model "M853" bearing the design covered by the '202 Patent. The same day, NIKE's counsel provided a copy of the '202 Patent to representatives at Superstar's WSA trade show booth. Nevertheless, on October 8, 2013, a private investigator discovered Superstar offering to sell the same design at its retail store in South El Monte, California.

27. On information and belief – as evidenced by the facts and circumstances alleged above, Defendants' infringements have been intentional and willful, and manifest a deliberate and continuing pattern of infringing Plaintiffs' trademark and design patent rights.

**Count I: Trademark Infringement under Section 32(1) of the Lanham Act**

**15 U.S.C. § 1114(1)**

28. NIKE re-alleges each and every allegation set forth in paragraphs 1 through 27 above, inclusive, and incorporates them by reference herein.

29. Defendants' offers to sell, sales, distribution, and/or advertisement of Offending Products violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

30. The NIKE Marks are entitled to protection under both federal and common law. The NIKE Marks include U.S. Trademark Registration Nos. 3,451,904 and 3,451,905. These trademark registrations have become incontestable and constitute conclusive evidence of the validity of trademarks and of NIKE's ownership of and exclusive right to use the trademarks.

31. The NIKE Marks have distinctive appearances using unique and non-functional designs. NIKE has extensively and continuously promoted and used the NIKE Marks for decades in the United States and worldwide. Through that extensive and continuous use, the NIKE Marks have become famous and well-known indicators of the origin and quality of NIKE footwear. The NIKE Marks have also acquired substantial secondary meaning in the marketplace. Moreover, the NIKE Marks became famous and acquired this secondary meaning long before Defendants commenced their use of the NIKE Marks and colorable imitations thereof in connection with the Offending Products.

32. Defendants' use of the NIKE Marks and colorable imitations thereof is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the Offending Products, at least by creating the false and misleading impression that the Offending Products are manufactured by, authorized by, or otherwise associated with NIKE.

33. Defendants' use of the NIKE Marks and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to NIKE for which NIKE has no adequate remedy at law, including at least substantial and

irreparable injury to the goodwill and reputation for quality associated with the NIKE Marks.

34. On information and belief, Defendants' use of the NIKE Marks and colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Offending Products to the NIKE Marks, as demonstrated in Illustration 4 above, and by the Defendants' long-standing and continuing disregard for NIKE's intellectual property rights.

35. NIKE is entitled to injunctive relief, and NIKE is also entitled to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorney fees under 15 U.S.C. §§ 1114, 1116, and 1117.

**Count II: False Designation of Origin/Unfair Competition under**
**Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

36. NIKE re-alleges each and every allegation set forth in paragraphs 1 through 35 above, inclusive, and incorporates them by reference herein.

37. Defendants' offers to sell, sales, distribution, and/or advertisement of Offending Products, in direct competition with NIKE, violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

38. The NIKE Marks are entitled to protection under both federal and common law. The NIKE Marks include U.S. Trademark Registration Nos. 3,451,904 and 3,451,905. These trademark registrations have become incontestable and constitute conclusive evidence of the validity of trademarks and of NIKE's ownership of and exclusive right to use the trademarks.

39. The NIKE Marks have distinctive appearances using unique and non-functional designs. NIKE has extensively and continuously promoted and used the NIKE Marks for decades in the United States and worldwide. Through that extensive and continuous use, the NIKE Marks have become famous and well-known indicators of the origin and quality of NIKE footwear. The NIKE Marks have also acquired substantial secondary meaning in the marketplace. Moreover, the NIKE Marks became

famous and acquired this secondary meaning long before Defendants commenced their use of the NIKE Marks and colorable imitations thereof in connection with the Offending Products.

40. Defendants' use of the NIKE Marks and colorable imitations thereof constitutes a false designation of origin that is likely to cause consumer as to the origin and/or sponsorship/affiliation of the Offending Products, at least by creating the false and misleading impression that the Offending Products are manufactured by, authorized by, or otherwise associated with NIKE.

41. Defendants' use of the NIKE Marks and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to NIKE for which NIKE has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the NIKE Marks.

42. On information and belief, Defendants' use of the NIKE Marks and colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Offending Products to the NIKE Marks, as demonstrated in Illustration 4 above, and by the Defendants' long-standing and continuing disregard for NIKE's intellectual property rights.

43. NIKE is entitled to injunctive relief, and NIKE is also entitled to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorney fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

**Count III: Dilution under Section 43(c) of the Lanham Act**

**<u>15 U.S.C. § 1125(c)</u>**

44. NIKE re-alleges each and every allegation set forth in paragraphs 1 through 43 above, inclusive, and incorporates them by reference herein.

45. Defendants' offers to sell, sales, distribution, and/or advertisement of Offending Products violates Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

/ / /

46. The NIKE Marks are entitled to protection under both federal and common law. The NIKE Marks include U.S. Trademark Registration Nos. 3,451,904 and 3,451,905. These trademark registrations have become incontestable and constitute conclusive evidence of the validity of trademarks and of NIKE's ownership of and exclusive right to use the trademarks.

47. The NIKE Marks have distinctive appearances using unique and non-functional designs. NIKE has extensively and continuously promoted and used the NIKE Marks for decades in the United States and worldwide. Through that extensive and continuous use, the NIKE Marks have become famous and well-known indicators of the origin and quality of NIKE footwear. The NIKE Marks have also acquired substantial secondary meaning in the marketplace. Moreover, the NIKE Marks became famous and acquired this secondary meaning long before Defendants commenced their use of the NIKE Marks and colorable imitations thereof in connection with the Offending Products.

48. Defendants' use of the NIKE Marks and colorable imitations thereof is likely to cause, and has caused, dilution of the famous NIKE Marks at least by eroding the public's exclusive identification of the famous NIKE Marks with NIKE and by lessening the capacity of the famous NIKE Marks to identify and distinguish NIKE footwear.

49. Defendants' use of the NIKE Marks and colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to NIKE for which NIKE has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the NIKE Marks.

50. On information and belief, Defendants' use of the NIKE Marks and colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Offending Products to the NIKE Marks, as demonstrated in Illustration 4 above, and by the Defendants' long-standing

and continuing disregard for NIKE's intellectual property rights.

51. NIKE is entitled to injunctive relief, and NIKE is also entitled to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorney fees under 15 U.S.C. §§ 1125(c), 1116, and 1117.

**Count IV: Common Law Trademark Infringement and Unfair Competition**

52. NIKE re-alleges each and every allegation set forth in paragraphs 1 through 51 above, inclusive, and incorporates them by reference herein.

53. Defendants' offers to sell, sales, distribution, and/or advertisement of Offending Products, in direct competition with NIKE, constitute common law trademark infringement and unfair competition.

54. The NIKE Marks are entitled to protection under both federal and common law. The NIKE Marks have distinctive appearances using unique and non-functional designs. NIKE has extensively and continuously promoted and used the NIKE Marks for decades in the United States and worldwide. Through that extensive and continuous use, the NIKE Marks have become famous and well-known indicators of the origin and quality of NIKE footwear. The NIKE Marks have also acquired substantial secondary meaning in the marketplace. Moreover, the NIKE Marks became famous and acquired this secondary meaning long before Defendants commenced their use of the NIKE Marks and colorable imitations thereof in connection with the Offending Products.

55. Defendants' use of the NIKE Marks and colorable imitations thereof is likely to cause consumer confusion as to the origin or sponsorship of the Offending Products by creating the false and misleading impression that the Offending Products are manufactured by, authorized by, or otherwise associated with NIKE.

56. Defendants' use of the NIKE Marks and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to NIKE for which NIKE has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the NIKE Marks.

57. On information and belief, Defendants' use of the NIKE Marks and colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Offending Products to the NIKE Marks, as demonstrated in Illustration 4 above, and by the Defendants' long-standing and continuing disregard for NIKE's intellectual property rights.

58. NIKE is entitled to injunctive relief, and NIKE is also entitled to recover Defendants' profits, actual damages, costs, and reasonable attorney fees.

**Count V: Dilution under California State Law**

**California Business and Professions Code § 14247**

59. NIKE re-alleges each and every allegation set forth in paragraphs 1 through 58 above, inclusive, and incorporates them by reference herein.

60. Defendants' offers to sell, sales, distribution, and/or advertisement of Offending Products are diluting and are likely to continue to dilute the distinctive nature of NIKE's trademarks and trade dress. These acts are injuring NIKE's business reputation and goodwill in violation of Section 14247 of California Business and Professions Code.

61. The NIKE Marks are entitled to protection under federal law, common law, and California state law. The NIKE Marks have distinctive appearances using unique and non-functional designs. NIKE has extensively and continuously promoted and used the NIKE Marks for decades in the United States and worldwide. Through that extensive and continuous use, the NIKE Marks have become famous and well-known indicators of the origin and quality of NIKE footwear. The NIKE Marks have also acquired substantial secondary meaning in the marketplace. Moreover, the NIKE Marks became famous and acquired this secondary meaning long before Defendants commenced their use of the NIKE Marks and colorable imitations thereof in connection with the Offending Products.

62. Defendants' use of the NIKE Marks and colorable imitations thereof is likely to cause, and has caused, dilution of the famous NIKE Marks at least by eroding

the public's exclusive identification of the famous NIKE Marks with NIKE and by lessening the capacity of the famous NIKE Marks to identify and distinguish NIKE footwear.

63. Defendants' use of the NIKE Marks and colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to NIKE for which NIKE has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the NIKE Marks.

64. On information and belief, Defendants' use of the NIKE Marks and colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Offending Products to the NIKE Marks, as demonstrated in Illustration 4 above.

65. NIKE is entitled to injunctive relief, and NIKE is also entitled to recover Defendants' profits, actual damages, and enhanced profits and damages.

**Count VI: Unfair Competition under California State Law**

**California Business and Professions Code § 17200**

66. NIKE re-alleges each and every allegation set forth in paragraphs 1 through 65 above, inclusive, and incorporates them by reference herein.

67. Defendants' offers to sell, sales, distribution, and/or advertisement of Offending Products constitutes unfair competition within the meaning and in violation of the California Business and Professions Code §§ 17200, *et. seq.*

68. The NIKE Marks are entitled to protection under federal law, common law, and California state law. The NIKE Marks include U.S. Trademark Registration Nos. 3,451,904 and 3,451,905. The NIKE Marks have distinctive appearances using unique and non-functional designs. NIKE has extensively and continuously promoted and used the NIKE Marks for decades in the United States and worldwide. Through that extensive and continuous use, the NIKE Marks have become famous and well-known indicators of the origin and quality of NIKE footwear. The NIKE Marks have

also acquired substantial secondary meaning in the marketplace. Moreover, the NIKE Marks became famous and acquired this secondary meaning long before Defendants commenced their use of the NIKE Marks and colorable imitations thereof in connection with the Offending Products.

69. Defendants' use of the NIKE Marks and colorable imitations thereof is likely to cause consumer confusion as to the origin or sponsorship of the Offending Products by creating the false and misleading impression that the Offending Products are manufactured by, authorized by, or otherwise associated with NIKE, and is also likely to cause, and has caused, dilution of the famous NIKE Marks at least by eroding the public's exclusive identification of the famous NIKE Marks with NIKE and by lessening the capacity of the famous NIKE Marks to identify and distinguish NIKE footwear.

70. Defendants' use of the NIKE Marks and colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to NIKE for which NIKE has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the NIKE Marks.

71. On information and belief, Defendants' use of the NIKE Marks and colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Offending Products to the NIKE Marks, as demonstrated in Illustration 4 above.

72. NIKE is entitled to injunctive relief pursuant to California Business and Professions Code § 17203, and NIKE is also entitled to recover Defendants' profits, restitution, and reasonable attorney fees.

## Count VII: Patent Infringement

73. NIKE re-alleges each and every allegation set forth in paragraphs 1 through 72 above, inclusive, and incorporates them by reference herein.

/ / /

74. On information and belief, Defendants have used, sold, or offered to sell, and will continue to use, sell, or offer to sell, footwear that infringes the claim of the Asserted Patent, without license from NIKE, in the State of California, including this judicial district, and elsewhere throughout the United States.

75. By using, selling, and/or offering for sale their footwear, Defendants have infringed, and will continue to infringe, the Asserted Patent under 35 U.S.C. § 271 literally and/or under the doctrine of equivalents.

76. On information and belief, Defendants' infringement of the Asserted Patent under 35 U.S.C. § 271 has been and continues to be willful and deliberate.

77. As a consequence of Defendants' infringing acts, NIKE has been, is being, and will continue to be injured and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. §§ 281, 284, 285, and 289.

78. As a consequence of Defendants' infringing acts, Defendants have also caused, are causing, and will continue to cause irreparable harm to NIKE, for which there is no adequate remedy at law, and for which NIKE is entitled to injunctive relief under 35 U.S.C. § 283.

## **Relief Sought**

WHEREFORE, Plaintiffs respectfully pray for:

1. Judgment that Defendants have (i) willfully infringed the Asserted Patent in violation of 35 U.S.C. §§ 271 (a) and (b), (ii) willfully infringed the NIKE Marks in violation of § 1114 of Title 15 in the United States Code; (iii) willfully used false designations of origin/unfair competition in violation of § 1125(a) of Title 15 in the United States Code; (iv) willfully diluted the NIKE Marks in violation of § 1125(c) of Title 15 in the United States Code; (v) willfully violated NIKE's common law rights in the NIKE Marks; (vi) willfully infringed the NIKE Marks and engaged in unfair competition in violation of the common law of California; (vii) willfully diluted the NIKE Marks in violation of § 14247 of the California Business and Professions Code;

and (viii) willfully engaged in unfair competition in violation of §§ 17200, *et. seq*. of the California Business and Professions Code;

2. A preliminary and permanent injunction against further infringement, direct and indirect, of the Asserted Patent by Defendants, and each of their agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with any of them;

3. A preliminary and permanent injunction against further infringement, false designation of origin, unfair competition, and dilution of the NIKE Marks by Defendants, and each of their agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, or advertising the Offending Products, or any other products that use a copy, reproduction, or colorable imitation of the NIKE Marks;

4. An order directing the destruction of all Offending Products, or any other products that use a copy, reproduction, or colorable imitation of the NIKE Marks in Defendants' possession or control, including the destruction of all advertising materials related to the Offending Products and any additional Offending Products in Defendants' possession or control, including on the Internet;

5. An award of damages adequate to compensate Plaintiffs for the patent infringements that have occurred pursuant to 35 U.S.C. § 284, which shall be trebled as a result of Defendants' willful patent infringement, or an award of Defendants' profits from their infringements pursuant to 35 U.S.C. § 289, whichever is greater, together with prejudgment interest and costs;

6. An assessment of costs, including reasonable attorney fees and expenses, pursuant to 35 U.S.C. § 285, with prejudgment interest;

7. An award of Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorney fees under 15 U.S.C. §§ 1114, 1116, and 1117 for Defendants' trademark infringements and dilution; and

/ / /

8. Such other and further relief as this Court deems just and proper.

Dated: January 31, 2014

Respectfully submitted,

By: James B. Hardin
Tyler J. Woods
Tu-Quyen Pham
NEWPORT TRIAL GROUP
4100 Newport Place, Suite 800
Newport Beach, CA 92660
*Local Counsel for Plaintiff*